UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ONE PRINZ YACHT NAMED ECLIPSE; REAL PROPERTY LOCATED AT 485 BRICKELL AVENUE, UNIT 1908, MIAMI, FL, AND 200 BISCAYNE BLVD. WAY, UNIT 4910, MIAMI, FL; AND BANK ACCOUNTS CONTROLLED BY AUGUSTO CÉSAR TAURONI MASIÁ. | Case No. 12-mc-162 (RCL) |

## MEMORANDUM OPINION

This case concerns U.S.-based properties, a yacht, and bank accounts included in two final forfeiture orders issued by the High Court of Justice of the Autonomous Community of Valencia, Spain ("the Spanish trial court") following the criminal prosecution and conviction of Mr. Augusto César Tauroni Masiá ("Mr. Tauroni") for his involvement in a scheme to embezzle charitable grant funds from the government of Valencia. The United States ("the government") filed an application with this Court to enter an order to enforce the foreign forfeiture judgment. Gov't Appl. to Enforce Foreign J., ECF No. 6. This Court ordered the government to provide interested parties notice of its application. Order, ECF No. 9. Mr. Tauroni contests the forfeiture orders and asks this Court to deny the government's application. Tauroni Claim, ECF No. 13. The government asks this Court to strike Mr. Tauroni's claim, Gov't Mot., ECF No. 15, as well as enter an order of final forfeiture, Gov't Appl. for Order of Final Forfeiture, ECF No. 16. After considering the submissions and the applicable law, this Court will **GRANT** the government's motion to strike and **GRANT** the government's application for entry of final forfeiture.

### I.   BACKGROUND

In March 2012, pursuant to two mutual legal assistance treaties between the United States and Spain, the United States filed an *ex parte* application to register and enforce a restraining order

issued by the Court of Instruction No. 21, in Valencia, Spain, against U.S.-based properties, a yacht, and bank accounts connected to Mr. Tauroni. Gov't Appl. for Restraining Order, ECF No. 1. This Court issued an order granting the government's application. Order, ECF No. 2.

The Spanish Special Anti-Corruption Prosecutor's Office identified the properties, yacht, and bank accounts during an investigation into scheme by Mr. Tauroni, a Spanish businessman, and officials at the Ministry of Solidarity and Citizenship in the autonomous region of Valencia, including the then-Minister Rafael Blasco Castany, to funnel charitable government subsidies to entities controlled by Mr. Tauroni and his associates. Gov't Mot., Ex. 2, Presiding Judge Pilar de la Oliva Marrades Aff., ECF No. 15-4, ¶¶ 12, 13, 21. Mr. Tauroni employed a variety of shell companies as part of the scheme, including Indra Holding and Investment Corporation ("Indra"). *Id.* at ¶ 22. Indra is a private corporation registered in Florida. Gov't Mot., Ex. 8, ECF No. 15-12. The only listed officers are Mr. Tauroni and his wife, Alina Indiekina Lyssenko ("Ms. Lyssenko"). *Id.* The case against Mr. Tauroni eventually proceeded to trial and was reportedly "one of the largest corruption cases to have been tried in Spain." ECF No. 15, at 2. Due to its size, the case was split into three separate trials immediately when filed with the Spanish court. ECF No. 15-4, ¶ 14; Gov't Mot., Ex. 3B, ECF No. 15-5, at 1.

In May 2014, following a trial in which Mr. Tauroni was represented by counsel, ECF No. 15-4, ¶ 16, Mr. Tauroni was convicted of embezzlement of government funds, subsidy fraud, and forgery of official documents. Gov't Mot., Ex. 4, Certified Final Conviction, ECF No. 15-6. Mr. Tauroni was sentenced to six years in prison. ECF No. 15-4, ¶ 16. Mr. Tauroni, along with two co-conspirators, was also ordered to pay a monetary judgment.[1] Mr. Tauroni appealed the

---

[1] Mr. Tauroni's claim notes that he and his co-defendants were ordered to pay €1,784,840. ECF No. 13, at 3. However, according to the government, the Spanish Supreme Court reduced the monetary judgment to €1,623,840 (approximately $1,906,670). ECF No. 6, at 6 & n.6; ECF No. 15-6, at 2. In any event, the specific amount of the

2

judgment and the Spanish Supreme Court affirmed his conviction in June 2015. ECF No. 15-6. With all appeals exhausted, the decision by the Spanish Supreme Court made Mr. Tauroni's conviction final. ECF No. 15-4, ¶¶ 17, 40; Gov't Mot., Ex. 2A, Presiding Judge Pilar de la Oliva Marrades Suppl. Aff., ECF No. 6-3, at 15.

Following the decision by the Spanish Supreme Court, the High Court of Justice of the Autonomous Community of Valencia issued two final forfeiture orders, in September and December 2015, respectively, to forfeit the funds and property subject to this Court's restraining order. Gov't Mot., Ex. 1A-B, Certified Spanish Final Forfeiture Orders, ECF No. 15-1, at 5–17; ECF No. 2. Together, the two forfeiture orders ("Spanish final forfeiture orders") concern the following assets:[2]

    (1) Real property located at the Viceroy, 485 Brickell Avenue, Unit 1901, Miami, Florida 33131 ("Viceroy Property");

    (2) Real property located at Epic West, 200 Biscayne Blvd. Way, Unit 4910, Miami, Florida 33131 ("Epic West property");

    (3) One 54-foot Prinz 'Coupe Sunseeker' yacht named *Eclipse*, serial number BEPRZHRG06C707 ("Prinz yacht");

    (4) JP Morgan Chase checking account number 882074396, held in the name of Augusto César Tauroni Masiá; and

    (5) JP Morgan Chase checking account number 3000590236, held in the name of Augusto César Tauroni Masiá.

The Spanish trial court found, and the Spanish Supreme Court affirmed, that the U.S.-based real properties, yacht, and bank accounts were acquired through or contained funds traceable to

---

monetary judgment is not relevant for the purposes of this Court's decision on the government's application for entry of final forfeiture.

[2] Two accounts at JP Morgan Chase (Account No. 956841779 and Account No. 2979121833) held in Ms. Lyssenko's name were included in the Spanish trial court's restraining order and were subject to this Court's March 2012 restraining order. ECF No. 2, at 3. The final Spanish forfeiture orders did not include these two accounts. ECF No. 15-1, at 5–17. Upon the government's request, this Court modified its restraining order to release these accounts in July 2020. ECF No. 6, at 4 n.4; Order, ECF No. 10.

the fraudulent charitable grant scheme. ECF No. 15-4, ¶¶ 21–25. The evidence at trial showed that Mr. Tauroni purchased the Viceroy Property and the Epic West Property using the misappropriated grant money and subsequently transferred ownership to Indra. *Id.* at ¶¶ 21–23; ECF No. 6, at 8. The Prinz yacht was purchased in a complicated flow through and sale-buyback transaction involving three shell corporations, all wholly controlled by Mr. Tauroni. ECF No. 6, at 7–8 & n.7. The Prinz yacht, like the real property, is presently owned by Indra. ECF No. 15-4, ¶¶ 22–23. Furthermore, trial evidence showed that Indra is beneficially owned by Mr. Tauroni. *Id.* at ¶¶ 22, 26; Gov't Mot., Ex. 11, Certified Restraining Order, ECF No. 15-11, at 5. Finally, the trial court established that the two bank accounts held in Mr. Tauroni's name received funds wired directly from the Valencian government, intended for various charitable causes, but were instead used personally by Mr. Tauroni and his associates. ECF No. 6, at 7.

A related proceeding involving Ms. Lyssenko confirmed the trial court's findings of fact. Ms. Lyssenko pleaded guilty to a money laundering charge related to the scheme. Gov't Mot., Ex. 2A, Spanish Ct. Op., ECF No. 15-2, at 191–92; Gov't Mot., Ex. 2B, English Translation of Spanish Ct. Op., ECF No. 15-3, at 4–5. As part of her plea agreement, Ms. Lyssenko, represented by counsel, confirmed Mr. Tauroni's connection to Indra as well as Indra's ownership in the Viceroy Property, Epic West Property, and Prinz yacht. ECF No. 15-2, at 192–93; ECF No. 15-3, at 5–6. The Spanish Supreme Court affirmed Ms. Lyssenko's plea agreement in relevant part on appeal. ECF No. 6, at 3–4 & n.1.

In May 2020, following a formal request from Spain, the United States filed an *ex parte* application to enforce the Spanish final forfeiture orders against the U.S.-based properties, a yacht, and bank accounts. ECF No. 6. The United States is obligated to assist Spain in forfeiture matters.

4

*See* Treaty on Mutual Legal Assistance in Criminal Matters, Nov. 20, 1990, U.S.-Spain, 1730 U.N.T.S. 133.

In July 2020, this Court issued an order directing the government to provide notice of the *ex parte* application to persons known to have an interest in the U.S.-based properties, yacht, and bank accounts and to publish notice of the application in a manner consistent with Rule G(4) of the Federal Rules of Civil Procedure – Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture. ECF No. 9; Fed. R. Civ. P. Supp. R. G(4). In accordance with this Court's order and Rule G, the government provided notice of its intent to enforce the foreign forfeiture judgment via newspaper publication in Florida and in Spain,[3] Gov't Mot., Ex. 11, Decl. of Pub., ECF No. 15-7, and provided notice to Mr. Tauroni as well as his counsel. Gov't Mot., Ex. 8, Not., ECF No. 15-8.

In September 2020, Mr. Tauroni filed a claim contesting the forfeiture of the Viceroy Property, Epic West Property, and Prinz yacht.[4] ECF No. 13. In September 2021, the government filed a motion to strike Mr. Tauroni's claim. ECF No. 15. In March 2022, the government filed an application for order of final forfeiture. ECF No. 16. These motions are ripe for review.[5]

---

[3] In August 2020, Bradesco BAC Florida Bank declared an interest in the real property the Epic West Property based on an outstanding unpaid mortgage on the property. Bradesco Claim, ECF No. 12. The government and Bradesco BAC Florida Bank resolved the bank's claim against the Epic West Property through an expedited stipulated settlement agreement. Gov't Appl. to Enter Final Forfeiture, Ex. 1, Proposed Stipulation Settlement, ECF No. 16-1. There are no outstanding claims to the U.S.-based properties, yacht or bank accounts.

[4] Mr. Tauroni filed his claim purportedly on behalf of Indra. ECF No. 13, at 1. Because a claim on behalf of a corporation can only be filed by counsel, *see Lennon v. McClory*, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998) (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993)), this Court allowed the claim to be filed as a claim of an individual. ECF No. 13, at 1. Mr. Tauroni filed a second, identical claim in January 2021, which this Court denied for the same reason cited in the previous order. ECF No. 14.

[5] Additionally, the government submitted an *ex parte* status report in August 2022 informing this Court that the mortgage on the Epic West Property is in default and that the holder of the mortgage, Bradesco BAC Florida Bank, intends to institute foreclosure proceedings. Rep., ECF No. 19.

## II.     LEGAL STANDARDS

28 U.S.C. § 2467 outlines a four-step process for enforcing a foreign forfeiture judgment in a U.S. court. First, "a foreign nation seeking to have a forfeiture [ ] judgment . . . enforced by a district court . . . shall [ ] submit a request to the Attorney General or the designee of the Attorney General." *Id.* § 2467(b)(1). Second, "the Attorney General [or designee] shall determine whether . . . to certify the request," *id.* § 2467(b)(2), considering (1) "a summary of the facts of the case and a description of the proceedings that resulted in the forfeiture or confiscation judgment;" (2) a "certified copy of the forfeiture or confiscation judgment;" (3) "an affidavit or sworn declaration establishing that the foreign nation took steps, in accordance with the principles of due process, to give notice of the proceedings to all persons in sufficient time to enable such persons to defend against the charges and that the judgment rendered is in force and is not subject to appeal;" and (4) "such additional information and evidence as may be required by the Attorney General or the designee of the Attorney General." *Id.* § 2467(b)(1)(A)–(D). The decision whether to certify a request made by a foreign nation "shall be final and not subject to . . . judicial review[.]" *Id.* § 2467(b)(2).

After the Attorney General or designee has approved the foreign nation's request to enforce a foreign judgment and the government has filed an application in the appropriate U.S. district court to enforce the judgment,[6] the court "*shall* enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation." *Id.* § 2467(d)(1) (emphasis added). Under the statute, the court must grant the application unless one of the five narrow exceptions applies. *See In re $6,871,042.36 and Accrued Interest*, No. 14-1222 (RBW), 2021 WL 1208942, at *5–6 (D.D.C. Mar. 31, 2021). A court may not enter an order to enforce the forfeiture judgment on

---

[6] The District Court for the District of Columbia is a proper venue. 28 U.S.C. § 2467(c)(2)(B).

behalf of the foreign nation if: (A) "the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law;" (B) "the foreign court lacked personal jurisdiction over the defendant;" (C) "the foreign court lacked jurisdiction over the subject matter;" (D) "the foreign nation did not take steps, in accordance with the principles of due process, to give notice of the proceedings to a person with an interest in the property of the proceedings in sufficient time to enable him or her to defend" that interest; or (E) "the judgment was obtained by fraud." 28 U.S.C. § 2467(d)(1)(A)–(E). In determining whether an exception applies, "the court shall be bound by the findings of fact to the extent that they are stated in the foreign forfeiture or confiscation judgment." *Id.* § 2467(e). *See In re $6,871,042.36*, 217 F. Supp. 3d 84, 97 (D.D.C. 2016) (holding that Congress intended to "prevent[ ] a litigant from taking 'two bites at the apple' by raising objections to the basis for the forfeiture in the Federal court that he also raised, or [was] entitled to raise, in the foreign court where the forfeiture action is pending").

### III. DISCUSSION

The process to enforce and register the Spanish final forfeiture judgment was consistent with 28 U.S.C. § 2467. As discussed above, "a foreign nation seeking to have a forfeiture [ ] judgment . . . enforced by a district court . . . shall [ ] submit a request to the Attorney General or [ ] designee[,]" *id.* § 2467(b)(1), and thereafter, "the Attorney General [or designee] shall determine whether . . . to certify the request[,]" *id.* § 2467(b)(2). Here, the record reflects that Spain made a request to the U.S. Attorney General regarding enforcement of the Spanish final forfeiture orders, that the Attorney General reviewed the request and delegated the authority to certify Spain's request to the Chief of the Money Laundering and Asset Recovery Section of the Criminal Division of the Department of Justice ("MLARS Chief"), and that the MLARS Chief

decided to certify the request. ECF No. 15-1, at 2; ECF No. 16, at 4. The decision by the MLARS Chief is not subject to judicial review. *See* 28 U.S.C. § 2467(b)(2). The government filed an application with this Court to enter an order to enforce the Spanish final forfeiture orders. 28 U.S.C. § 2467(c)(1); ECF No. 16. Therefore, this Court must enforce the Spanish final forfeiture orders unless a specific statutory exception applies.

Mr. Tauroni's claim raises six arguments as to why this Court should not enforce the Spanish forfeiture orders.[7] First, he argues that the Viceroy Property, the Epic West property, and the Prinz yacht cannot be forfeited because Indra, not Mr. Tauroni, is the sole owner of the properties. ECF No. 13, at 2–3. Second, Mr. Tauroni maintains that property titled in Indra's name cannot be used to satisfy the judgment against him because Indra was not included as a party liable for the monetary judgment, nor was Indra present at the Spanish criminal trial to represent itself. *Id.* at 3. Third, Mr. Tauroni references various provisions of the Spanish criminal justice code to suggest that forfeiture is not possible under Spanish law due to the absence of a final judgment involving Indra. *Id.* at 4. Fourth, Mr. Tauroni asserts that "it is very likely that the confiscation order is time-barred under U.S. law." *Id.* Fifth, Mr. Tauroni states that forfeiture would adversely affect the rights of third parties, including unnamed shareholders of Indra, Bradesco BAC Florida Bank (the lender on the unpaid mortgage for the Epic West Property), the homeowners associations of both the Viceroy Property and Epic West Property (for unpaid community fees), Chase Bank (for an unpaid debt), an unidentified Spanish company (for an unpaid debt related to the purchase of the yacht), and the state of Florida (for unpaid real estate taxes). *Id.* at 5; ECF No. 15, at 9. Sixth, and finally, Mr. Tauroni claims that the properties cannot

---

[7] Mr. Tauroni appeared to assert four arguments in his filing but, upon review, this Court will construe his claim as asserting six arguments. Additionally, Mr. Tauroni's claim only contests the forfeiture of the Viceroy Property, Epic West property, and Prinz yacht, but not the bank accounts held in his name. ECF No. 13.

8

be forfeited because they are under the jurisdiction of another Spanish court pending a final decision on potential civil liability resulting from that case. ECF No. 13, at 5–6.

Five of Mr. Tauroni's arguments are potentially relevant. Though Mr. Tauroni does not specifically cite to the exceptions listed in 28 U.S.C. § 2467(d)(1), five of his arguments—the first, second, third, fourth, and sixth—could be characterized as invoking the personal jurisdiction exception, *id.* § 2467(d)(1)(B), or subject matter jurisdiction exception, *id.* § 2467(d)(1)(C). The statutory exceptions in 28 U.S.C. § 2467(d)(1)(A)–(E) are the only factors this Court is required to consider in deciding whether enforce the Spanish final forfeiture orders. *See In Re $6,871,042.36 and Accrued Interest*, 2021 WL 1208942 at *5. Because Mr. Tauroni's fifth claim does not fall within a statutory exception in 28 U.S.C. § 2467(d)(1), this Court will not consider it.[8]

The government argues that none of the exceptions in 28 U.S.C. § 2467(d)(1)(A)–(E) apply to this case and that Mr. Tauroni has not raised any viable arguments as to why this Court should not enforce the Spanish final forfeiture orders. ECF No. 16, at 5–6. This Court agrees.

### A. The Due Process Exception in 28 U.S.C. § 2467(d)(1)(A) Does Not Apply

There is no indication that the proceeding which resulted in the Spanish final forfeiture orders lacked due process. As explained by Presiding Judge Oliva, Spanish law provides ample

---

[8] Even if this Court were to consider Mr. Tauroni's fifth argument—that forfeiture would adversely affect the rights of third parties, including unidentified Indra shareholders, Bradesco BAC Florida Bank, the homeowners associations of both the Viceroy and Epic West properties, Chase Bank, an unidentified Spanish company, and the state of Florida—it would be without merit. The Spanish trial court indicated that Mr. Tauroni and Ms. Lyssenko are Indra's only shareholders. ECF No. 15-4, ¶ 22; ECF No. 6, at 8; ECF No. 15, at 11. Both Mr. Tauroni and Ms. Lyssenko had multiple opportunities to challenge the forfeiture orders yet failed to do so. ECF No. 15, at 11; ECF No. 15-4, ¶ 26. In fact, Ms. Lyssenko, exercising her power of attorney for Indra, already agreed to forfeiture of the Viceroy Property, Epic West Property, and Prinz yacht. ECF No. 15, at 3–4; ECF No. 15-2, at 192–93; ECF No. 15-3, at 5–6. Bradesco BAC Florida Bank has already entered into a stipulated settlement agreement with the government to resolve its claim. ECF No. 16-1; ECF No. 15, at 7. Finally, the government represents that outstanding debts on property—including unpaid homeowners' association fees, unpaid credit card debt, unpaid purchase-money debt, and unpaid state taxes—do not prevent forfeiture as any proceeds from the assets' sale may be used to satisfy unpaid creditors. ECF No. 15, at 11.

due process guarantees. Article 118 of the Spanish Law on Criminal Procedure bestows on the accused rights to: "be informed of the facts attributed to [him]," "appoint a lawyer [to represent him] ... [or] apply for free legal aid"; "to remain silent and not give a statement"; or "not to answer some or any of the questions asked [to him] [.]" ECF No. 15-4, ¶¶ 6–9. Such rights are consistent with the requirements of due process in the United States. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Moreover, Mr. Tauroni had the right—and did exercise his right—to be represented by counsel during the criminal investigation, trial, and appeal to the Spanish Supreme Court. ECF No. 15-4, ¶¶ 6–9, 13, 26. The presence of notice, the opportunity to be heard, and representation by counsel indicate that the due process exception to enforcement of a foreign forfeiture judgment in 28 U.S.C. § 2467(d)(1)(A) does not apply.

### B. The Personal Jurisdiction Exception in 28 U.S.C. § 2467(d)(1)(B) Does Not Apply

The High Court of Justice of the Autonomous Community of Valencia, the court that issued the Spanish final forfeiture orders, and had personal jurisdiction over Mr. Tauroni and the properties connected to him. The High Court of Justice of the Autonomous Community of Valencia, "the highest judicial body within [its] territory, is competent to investigate, prosecute, and execute the sentence in those cases of an offence in which a person may be found involved who by law enjoys a special exemption [from prosecution.]" ECF No. 15-4, ¶¶ 2–5. Rafael Blasco Castany, then-Minister of Solidarity and Citizenship and one of Mr. Tauroni's co-conspirators, was such an official. *Id* at ¶ 12. Therefore, because Mr. Tauroni participated in a conspiracy involving a person with a special immunity from prosecution, the court had personal jurisdiction over him and his associates. *See In Re $6,871,042.36 and Accrued Interest*, 2021 WL 1208942 at *5 (noting that a foreign court's authority to judge the defendant establishes personal jurisdiction). Additionally, as the government notes, the record does not contain evidence that either Mr. Tauroni

10

or Ms. Lyssenko challenged the court's jurisdiction. ECF No. 6, at 13–14. The Spanish trial court—not this Court—was the proper forum in which to contest personal jurisdiction.

Mr. Tauroni's first and second arguments appear to question the Spanish trial court's personal jurisdiction but are both without merit. Regarding his first argument, that the Viceroy Property, Epic West Property, and Prinz yacht belong to Indra, the trial court already determined that Indra "was constituted with the sole purpose of concealing" Mr. Tauroni's identity and that Mr. Tauroni, in fact, was Indra's "full owner." ECF No. 15-4, ¶ 26. This Court is prevented from revisiting these determinations, as this Court is bound by the Spanish trial court's findings of fact. *See* 28 U.S.C. § 2467(e). In response to Mr. Tauroni's second argument, that the Viceroy Property, Epic West Property, and Prinz yacht cannot be forfeited because Indra was not included in the judgment, the government correctly points out that its application seeks to enforce the final forfeiture orders issued by the High Court of Justice of the Autonomous Community of Valencia in September and December 2015, not the monetary judgment against Mr. Tauroni. ECF No. 15, at 10. Moreover, the Spanish trial court opinion clearly connected the Viceroy Property, Epic West Property, and Prinz yacht to Mr. Tauroni through Indra. ECF No. 15-2, at 95–96; ECF No. 15-3, at 2–3. Mr. Tauroni had both the incentive and opportunity to litigate Indra's involvement and liability in Spain and either failed to do so or failed to persuade the Spanish court. ECF No. 15, at 10 & n.6. This Court is satisfied that the personal jurisdiction exception in 28 U.S.C. § 2467(d)(1)(B) does not apply.

### C. The Subject Matter Jurisdiction Exception in 28 U.S.C. § 2467(d)(1)(C) Does Not Apply

The High Court of Justice of the Autonomous Community of Valencia and the Spanish Supreme Court both properly exercised subject matter jurisdiction over Mr. Tauroni's case. The Spanish trial court had the authority to issue a sentence "[a]fter the corresponding adversarial

11

proceeding, with the presence of all the accused, duly assisted by lawyers of their choice, where the evidentiary means freely proposed on equal terms by all parties were examined," ECF No. 15-4, ¶ 16. Additionally, the Spanish Supreme Court has the authority to review—and affirm—decisions by the High Court of Justice of the Autonomous Community of Valencia. *Id.* at ¶ 5.

Mr. Tauroni's third, fourth, and sixth arguments, challenging the Spanish trial court's subject matter jurisdiction, are all without merit. With respect to Mr. Tauroni's third argument, the lack of a final judgment involving Indra, the Spanish final forfeiture orders issued by the Spanish trial court linked the Viceroy Property, Epic West Property, and Prinz yacht to Indra and Mr. Tauroni. ECF No. 15-2, at 95–96; ECF No. 15-3, at 2–3. This Court is not the proper forum for Mr. Tauroni to relitigate the Spanish trial court's findings of fact. *See* 28 U.S.C. § 2467(e). The orders became final when Mr. Tauroni failed to appeal the orders within the time period provided under Spanish law. ECF No. 6, at 14. Additionally, Mr. Tauroni's fourth argument, that the Spanish final forfeiture orders are likely time-barred under U.S. law, is not supported by citations to any potentially applicable authority, nor does 28 U.S.C § 2467 contain a time bar. Finally, Mr. Tauroni's sixth argument, that the property cannot be forfeited because it is subject to an ongoing case before another Spanish court, misses the mark. That certain cases against Mr. Tauroni are still pending have no bearing on the fact that the first trial, which resulted in a final forfeiture judgment, is final. ECF No. 15, at 11. Thus, the subject matter jurisdiction exception to enforcement in 28 U.S.C. § 2467(d)(1)(C) does not apply.

### D. The Notice Exception in 28 U.S.C. § 2467(d)(1)(D) Does Not Apply

Contrary to Mr. Tauroni's second argument, that Indra did not have notice of the Spanish trial court's intention to seek forfeiture, interested parties in the U.S.-based properties, yacht, and bank accounts were properly notified on multiple occasions. The record proves fatal for Mr.

Tauroni: as Presiding Judge Oliva attested, the Spanish court's initial restraining order against the U.S.-based properties, yacht, and bank accounts "was duly notified to Mr. Cesar Augusto Tauroni, as well as his partner, Ms. Alina Indiekina Lyssenko, who at that time were assisted by counsel, which allowed them to oppose it, with all legal guarantees, not only in their names *but also in that of Indra Holding And Investment Corporation*[.]" ECF No. 15-4, ¶ 26 (emphasis added). Thus, Mr. Tauroni, represented by counsel, had full notice that the Spanish court sought properties held in Indra's name. Moreover, Mr. Tauroni had an opportunity to appeal the orders, yet failed to do so. ECF No. 6, at 14. Mr. Tauroni also received notice of the Spanish trial court's intention to seek forfeiture when he received the Spanish final forfeiture orders. ECF No. 15-1, at 5–17. Importantly, the December 2015 order specifically lists the Viceroy Property, Epic West Property, and Prinz yacht, "held in the name of Indra Holding and Investment Corp." ECF No. 15-1, at 10. Under Spanish law, Mr. Tauroni had three days to appeal the orders, but elected not to do so, making the orders final. ECF No. 6, at 14. Based on the record, the notice exception to enforcement of a foreign forfeiture judgment in 28 U.S.C. § 2467(d)(1)(D) does not apply.

### E. The Fraud Exception in 28 U.S.C. § 2467(d)(1)(E) Does Not Apply

There is no indication that the Spanish final forfeiture orders were the result of fraud. The government represents to this Court that it "has no reason to believe that the forfeiture orders were obtained by fraud." *Id.* Other factors indicating an absence of fraud include the lengthy and high-profile nature of the case, involvement of counsel, and ultimate review by the Spanish Supreme Court. Finally, Mr. Tauroni has not raised any claims of fraud in any Spanish court, *id.*, nor to this

Court. Therefore, the fraud notice exception to enforcement of a foreign forfeiture judgment in 28 U.S.C. § 2467(d)(1)(E) does not apply.

## IV.   CONCLUSION

Because the government has satisfied the statutory requirements for an entry of final forfeiture and Mr. Tauroni has not sufficiently raised the existence of an exception, the Court will **GRANT** the government's motion to strike, ECF No. 15, and **GRANT** the government's application for final order of forfeiture, ECF No. 16. A separate Order consistent with this Memorandum Opinion shall issue this date.

Date: September 9, 2022

Royce C. Lamberth
United States District Judge